# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | |
|---|---|
| JENNIE GUERRIDO and PATRICK MANIACI, Individually and on Behalf of All Others Similarly Situated,     ) ) ) ) | Case No.: 18-cv-479 **CLASS ACTION COMPLAINT** |
| Plaintiffs,      ) ) | |
| v.      ) ) | **Jury Trial Demanded** |
| CONVERGENT OUTSOURCING INC., AMERICAN CORADIUS INTERNATIONAL LLC, and PINNACLE CREDIT SERVICES, LLC,      ) ) ) ) ) | |
| Defendants.      ) ) | |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, ch. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3.      Plaintiff Jennie Guerrido is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff Patrick Maniaci is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.     Each plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her or him debts allegedly incurred for personal, family, or household purposes, namely a personal credit card or unsecured credit line.

6.     Each plaintiff is a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that she or he allegedly engaged in consumer credit transactions.

7.     Defendant Convergent Outsourcing, Inc. ("Convergent") is a debt collection agency with its principal offices located at 800 SW 39th Street, Renton, Washington 98057.

8.     Convergent is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9.     Convergent is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

10.     Convergent is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and. Wis. Admin. Code Ch. DFI-Bkg 74.

11.     Convergent is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

12.     Defendant American Coradius International, LLC ("ACI") is a debt collection agency with its principal offices located at 2420 Sweet Home Road Ste 150, Amherst, New York 14228.

13.     ACI is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

14.     ACI is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

2

15.     ACI is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

16.     Defendant Pinnacle Credit Services, LLC ("Pinnacle") is a foreign limited liability company with its principal offices located at 625 Pilot Road, Ste 2, Las Vegas, Nevada 89119.

17.     Upon information and belief, Pinnacle purchases and owns consumer debts and attempts to collect those debts.

18.     The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

19.     The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 172984 (M.D. Pa. Oct. 19, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697 *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'"); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV*

3

*Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017).

20.     The primary purpose of Pinnacle's business, and Pinnacle's principal purpose, is the collection of consumer debts.

21.     Pinnacle's website states:

Pinnacle Credit Services, LLC, ("Pinnacle") purchases portfolios of both domestic (U.S.) and international consumer debt owned by credit grantors including banks and finance companies, and by other debt buyers. As the new owner of any debt previously owned by another creditor, Pinnacle's name may appear on a customer's credit report or in a letter from a collection agency.

The management of purchased assets is outsourced to a third-party specializing in the management of these types of consumer assets, Resurgent Capital Services LP (Resurgent). Resurgent is a manager and servicer of domestic and international consumer debt portfolios for credit grantors and debt buyers, including Pinnacle, and performs these services on their behalf. Resurgent, a licensed debt collector, may perform these activities directly, or in most cases, will outsource the recovery activities to other, independent, specialized, licensed collection agencies. If you are a customer, please direct your inquiries to the firm currently servicing your account.

http://www.pinnaclecredit.com/ (accessed Feb. 20, 2018).

22.     In addition to indirectly collecting consumer debts through Resurgent Capital Services LP, Pinnacle has used the Wisconsin courts in its debt collection activities.  A general search on Wisconsin Circuit Court Access ("CCAP") for Pinnacle returns at least 291 actions filed.  Upon information and belief, all of those cases are collection actions against Wisconsin consumers.

23.     Pinnacle is also engaged in the business of a collection agency under Wisconsin law, in that it purchases and receives assignment of consumer debts.

24.     Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to

4

collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added). On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

25.     Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

26.     Pinnacle is a "merchant" as defined in the WCA, as it has, or claims to have, taken assignment of Plaintiff's former student loan accounts.  Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.").

27.     The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

28.     The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/ (accessed February 16, 2018).

5

29.    Pinnacle uses both ordinary collection methods such as mail and telephone communications and engagement of third-party debt collectors, as well as civil lawsuits, in its collection business.

30.    Pinnacle is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

31.    A company meeting the definition of a "debt collector" (here, Pinnacle) is vicariously liable for the actions of as second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf).

## **FACTS**

### ***Facts Relating to Plaintiff Guerrido***

32.    Prior to August 8, 2016, Guerrido's PayPal-brand credit account, which was owned and issued by Comenity Capital Bank ("Comenity"), went into default and was "charged off."

33.    Guerrido's PayPal-brand credit account was an open-end credit account that was used only for personal, household, or family purposes.

34.    On or about August 8, 2016, ACI mailed a debt collection letter to Guerrido regarding an alleged debt, allegedly owed to "COMENITY CAPITAL BANK" ("Comenity") and associated with her alleged PayPal Credit account.  A copy of this letter is attached to this complaint as Exhibit A.

35.    Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Guerrido inserted by computer.

6

36.     Upon information and belief, Exhibit A is a form debt collection letter, used by ACI to attempt to collect alleged debts.

37.     Upon information and belief, Exhibit A was the first written communication ACI mailed to Guerrido regarding the alleged debt referenced in Exhibit A.

38.     Exhibit A contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

39.     Exhibit A also contains the following:

| | |
|---|---|
| **Creditor:** | COMENITY CAPITAL BANK |
| **Original Creditor:** | COMENITY CAPITAL BANK |
| **Account Number:** | ███████6707 |
| **Reference Number:** | ██7279 |
| **Account Balance:** | $731.91 |
| **Amount Remitted:** | $ |

40.     Exhibit A states that, as of August 8, 2016, Guerrido's PayPal Credit account ending in 6707 had an "Account Balance" of $731.91.

41.     On or about August 15, 2017, Convergent mailed a debt collection letter to Guerrido regarding the same alleged debt, allegedly owed to "Comenity Capital Bank" and associated with Guerrido's PayPal Credit account.  A copy of this letter is attached to this complaint as Exhibit B.

42.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Guerrido inserted by computer.

7

43.     Upon information and belief, Exhibit B is a form debt collection letter, used by Convergent to attempt to collect alleged debts.

44.     Upon information and belief, Exhibit B was the first written communication Convergent mailed to Guerrido regarding the alleged debt referenced in Exhibit B.

45.     The reverse side of Exhibit B contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume the debt is valid.  If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit B.

46.     Exhibit B also contains the following:

> Date: 08/15/2017
> Creditor: Comenity Capital Bank
> PayPal Credit Account #: ██████6707
> Convergent Account #: ██████3173
>
> Reduced Balance Amount:     $ 365.94
>             Amount Owed:     $ 731.88
>             Total Balance:     $ 731.88

Exhibit B.

47.     Exhibit B states that, as of August 15, 2017, Guerrido's PayPal Credit account had a "Total Balance" of $731.88.

48.     The account balance stated in Exhibit B, $731.88, conflicts with the account balance stated in Exhibit A, $731.91.

8

49.     There is no explanation for why the account balance decreased by three cents. Together, Exhibits A and B are confusing and misleading to the unsophisticated consumer as to the actual account balance.

50.     Exhibit B also states:

> Our client has advised us that they are willing to satisfy your account for 50% of your total balance. The full amount must be received in our office by an agreed upon date. If you are interested in taking advantage of this opportunity, call our office within 60 days of this letter. Even if you are unable to take advantage of this opportunity, please contact our office to see what terms can be worked out on your account. We are not required to make this opportunity available to you in the future.

Exhibit B.

51.     Exhibit B also contains a payment remittance slip, which states:

877-317-1200

Re: Jennie Guerrido

Creditor: Comenity Capital Bank
PayPal Credit Account #: ▮▮▮▮6707
Convergent Account #: ▮▮▮▮3173
Reduced Balance Amount: $ 365.94
Total Balance: $ 731.88
Amount Enclosed: US _____

**Lump Sum Reduced Balance Opportunity of 50%:**
Enclosed is my payment of $ 365.94 of the Total Balance Due. My account is satisfied once the payment clears.

PLEASE COMPLETE IF **PAYING** BY CREDIT/DEBIT CARD.

| VISA ☐ | MasterCard ☐ |
|---|---|
| CARD NUMBER | EXP. DATE |
| CARDHOLDER NAME | AMOUNT $ |
| CARDHOLDER SIGNATURE | |

Exhibit B.

52.     On its face, Exhibit B is confusing and misleading as to the amount Convergent is attempting to collect.

53.     Exhibit B states two balances: the "Reduced Balance Amount" and the "Total Balance."

54.     The unsophisticated consumer would be unable to determine if Convergent has been hired to collect the "Total Balance" or if a portion of the account has been forgiven and Convergent is only collecting the "Reduced Balance Amount."

55.     On its face, Exhibit B is confusing and misleading as to the amount needed to effectively resolve the account.

9

56.     Exhibit B states that the account has a "Total Balance" of $731.88 and that the "client has advised us that they are willing to satisfy your account for 50% of your total balance."

57.     Exhibit B states that the account has a "Reduced Balance Amount" of $365.94.

58.     However, Exhibit B contradicts itself, by stating that "*the full amount* must be received in our office . . . ."

59.     Exhibit B is patently unclear as to whether Convergent purports to offer to settle the account or has actually reduced the balance of the account, in which case paying of the "full amount" offered would actually pay the account in full.

60.     In the context of credit reporting, there is a difference between resolving an account by paying the account in full and resolving the account by settling it in full.  The unsophisticated consumer would be confused as to whether the account would be reported as "paid in full" or "settled in full."  *See e.g., Molton v. Experian Info. Solutions, Inc.*, 2004 U.S. Dist. 659, at *13 (N.D. Ill. Jan. 21, 2004); *Nielsen v. E\*Trade Mortg. Corp.*, 2015 U.S. Dist. LEXIS 39781, at *4-5 (E.D. Mich. Mar. 30, 2015); *Shaw v. Experian Info. Solutions, Inc*., 2016 U.S. Dist. LEXIS 134991, at *31-32 (S.D. Calif. Sept. 28, 2016); *Keller v. Trans Union LLC*, 2017 U.S. Dist. LEXIS 283, at *7-8 (D. Ariz. Jan. 3, 2017).

61.     The payment remittance slip in Exhibit B exacerbates this confusion.

62.     The payment remittance slip in Exhibit B characterizes the offer as a "Lump Sum Reduced Balance Opportunity," notes that "Enclosed is my payment of $365.94 of the Total Balance Due," and states both the "Total Balance" and the "Reduced Balance Amount."

63.     The payment remittance slip in Exhibit B also contains the following, which further exacerbates the confusion:

If Options 2 or 3 Have Been Selected, Please Enter Monthly

Payment Date and Amount: _____ $_____

Exhibit B.

64.     Exhibit B refers to "Options 2 or 3," and asks that the consumer "Please Enter Monthly Payment Date and Amount," but Exhibit B does not make any other references to Options 2 or 3.  There is only one option presented in the payment remittance slip in Exhibit B.

65.     The unsophisticated consumer would be confused as to whether there was some other payment option she should have been, but was not, offered, including the option to *settle* the account by paying a portion of the "Reduced Balance Amount."

66.     Upon information and belief, the "Reduced Balance Amount" stated in Exhibit B is actually an offer to settle the account, not a "reduced balance" by which the consumer may pay the account in full.

67.     Upon information and belief, if the consumer paid the "Reduced Balance," Convergent, and/or the creditor, would report the account to consumer reporting agencies as "settled in full" rather than "paid in full."

68.     Upon information and belief, Convergent uses the phrase "reduced balance amount" to confuse consumers and induce them into paying this amount under the assumption that Convergent, and the creditor, will report the account to consumer reporting agencies as "paid in full."

69.     Moreover, while the debt validation notice is on the reverse side of Exhibit B, the face of the payment remittance slip in Exhibit B contains the following:

If we are calling you in error, please call 855-728-9701 or visit
our website at www.convergentusa.com.

Exhibit B.

70.     The instruction on the face of Exhibit B that the consumer should contact Convergent by telephone "if we are calling you in error" is false, deceptive, and misleading to

11

the unsophisticated consumer because it contradicts, overshadows, and confuses the debt validation notice on the reverse side of Exhibit B and encourages the consumer to forego her verification rights by communicating disputes orally rather than in writing:

15 U.S.C. § 1692g(a)(4) states:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

…

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

71.     To trigger verification rights, the debtor must provide the debt collector with written notification that there is a dispute.  15 U.S.C. § 1692g(a)(4); *see McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003) ("If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.") (citing *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. May 20, 1999)).

72.     Upon receiving a *written* dispute from the consumer within the 30-day debt validation period, the FDCPA requires the debt collector to contact the creditor and obtain verification of the debt before conducting any further collection efforts. 15 U.S.C. § 1692g(b):

(b) Disputed debts

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of

12

the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

73.     The most likely reasons a consumer may believe Convergent is calling her "in error" are that she has already paid the debt or never owed it in the first place, which are the classic FDCPA disputes and the primary reasons Congress adopted the debt validation procedure specified in 15 U.S.C. 1692g.  *Majeski v. I.C. Sys.*, 2010 U.S. Dist. LEXIS 1830, at *22 n. 6 ("Congress enacted the FDCPA to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.") (quoting *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)).

74.     <u>Exhibit B</u> confusingly directs the debtor to notify Convergent about these disputes without informing the consumer that the dispute must be communicated in writing in order to trigger verification.  *See Osborn v. Ekpsz, LLC*, 821 F.Supp.2d 859, 868, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections(a)(4) and (a)(5) must be made in writing."); *see also, McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743-44 (N.D. Ill. July 8, 2003) (omitting the words "in writing" from the validation notice conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at *9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F.Supp.2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F.Supp.2d 841, 845 (E.D. Va. May 5, 2011); *Welker*

13

*v. Law Office of Daniel J. Horowitz*, 699 F.Supp.2d 1164, 1170 (S.D. Cal. 2010); *Beasley v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353, at *16 (N.D. Cal. Mar. 24, 2006); *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. Aug. 19, 2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS 25032, at *28 (M.D. Tenn. Nov. 15 2002); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990); *Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, 151-152 (3d Cir. 2013); *Rhoades v. West Virginia Credit Bureau Reporting Servs.*, 96 F. Supp. 2d 528, (S.D. W. Va. May 10, 2000); *O'Chaney v. Shapiro & Kreisman, LLC*, U.S. Dist. LEXIS 5116, at *12-13 (Mar. 25, 2004); *Flowers v. Accelerated Bureau of Collections*, 1997 U.S. Dist. LEXIS 3354, at *18-19 (N.D. Ill. Mar. 13, 1997).

75.     Convergent's instruction, which is offset and easily read, would confuse and mislead consumers who wish to dispute debts to believe that a debtor who disputes her debt orally is entitled to the same protections as if she had communicated her dispute in writing, when she is not so entitled.  *See Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005).

76.     The overshadowing effect is compounded because Convergent provides the validation notice on the reverse side of the letter but the offending language is on its face.  *See e.g., Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990) ("The invitation to telephone unaccompanied by any warning that the notice must be in writing to be effective obscures the dispute validation notice required by 15 U.S.C. § 1692g.").

77.     The overshadowing effect is also compounded by the general confusion caused by the confusing references to the "Reduced Balance Amount" and "Options 2 or 3" on the face of

14

Exhibit B, which would prompt the consumer to telephone Convergent to ask what amount Convergent is actually attempting to collect, and whether the consumer was supposed to have been presented with other options. *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the receipient feel that he is in over his head and had better pay up rather than question the demand for payment."); *see also Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000) ("to authorize debt collectors to comply orally would be just an invitation to the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.").

78.     Exhibit B contradicts, overshadows and confuses the 15 U.S.C. § 1692g notice.

79.     Guerrido was confused and misled by Exhibits A and B.

80.     The unsophisticated consumer would be confused and misled by Exhibits A and B.

81.     Guerrido had to spend time and money investigating Exhibits A and B and the consequences of any potential responses to Exhibits A and B.

82.     Guerrido had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to obtain counsel on the consequences of Exhibits A and B.

### *Facts Relating to Plaintiff Maniaci*

83.     On or about May 4, 2017, Convergent mailed a debt collection letter to Maniaci regarding an alleged debt, allegedly owed to Pinnacle and originally owed to "Verizon Wireless." A copy of this letter is attached to this complaint as Exhibit C.

84.     Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Maniaci inserted by computer.

15

85.     Upon information and belief, Exhibit C is a form debt collection letter, used by Convergent and Pinnacle to attempt to collect alleged debts.

86.     Upon information and belief, Exhibit C was the first written communication Convergent mailed to Maniaci regarding the alleged debt referenced in Exhibit C.

87.     The reverse side of Exhibit C contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume the debt is valid.  If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit C.

88.     Exhibit C also contains the following:

Date:  05/04/2017
Current Creditor: Pinnacle Credit Services, LLC
Client Account #: XXXXX3562
Convergent Account #: ███████7513
Original Creditor: Verizon Wireless

Reduced Balance Amount: $ 202.28
        Amount Owed:     $ 505.71
        Total Balance:     $ 505.71

Exhibit C.

89.     Exhibit C states that, as of May 4, 2017, Maniaci's Pinnacle account had a "Total Balance" of $505.71 and a "Reduced Balance Amount" of $202.28.

90.     Exhibit C also states:

16

Our client has advised us that they are willing to satisfy your account for 40% of your total balance due to satisfy your past balance. The full reduced balance amount must be received in our office by an agreed upon date. If you are interested in taking advantage of this opportunity, call our office within 60 days of this letter. Your reduced balance amount would be $ 202.28. Even if you are unable to take advantage of this arrangement, please contact our office to see what terms can be worked out on your account. We are not required to make this arrangement to you in the future.

Exhibit C.

91.    Exhibit C also contains a payment remittance slip, which states:



Exhibit C.

92.    Exhibit C states three different balances: the body of Exhibit C refers to a "Reduced Balance Amount" of $202.28 and a "Total Balance" of $505.71, and the payment remittance slip also refers to a "Reduced Balance" of $328.71.

93.    On its face, Exhibit C is confusing and misleading as to what happens if a consumer tenders a $109.57 payment pursuant to Opportunity #2 but does not make any other payments.

94.    Exhibit C characterizes Opportunity #2 as making a "Reduced Balance Offer."

95.    Opportunity #2 purports to allow the consumer to pay the reduced balance over three months.

96.    Exhibit C implies to the consumer that a $109.57 payment "towards the reduced balance of $328.71" pursuant to Opportunity #2 not only credits the account but actually triggers

17

Case 2:18-cv-00479-JPS    Filed 03/27/18    Page 17 of 35    Document 1

a reduction in the balance itself, from the Total Balance, $505.71 to the Reduced Balance, $328.71.

97.    After making the $109.57 payment "towards the reduced balance of $328.71," the new "reduced balance" of the account would be $219.14.

98.    However, it is unclear whether the "reduced balance" would revert back to the "Total Balance" in the event that the consumer does not pay the "full reduced balance amount" over three months and it is unclear whether the representation that the consumer may "Pay over 3 Months" means that the consumer may pay over three months from the date Exhibit C was mailed or three months from the date of the first payment.

99.    The statement in the body of Exhibit C that "the full reduced balance amount must be received in our office by an agreed upon date" does not cure this confusion because the the nature of an "agreed upon date" is inherently open-ended.

100.    Moreover, it is unclear whether the statement that "the full reduced balance amount must be received in our office by an agreed upon date" even applies to Opportunity #2. The body of Exhibit C makes no reference to Opportunity #2 and expressly states "your reduced balance amount would be $202.28."

101.    Upon information and belief, Opportunity #2 is a settlement offer, and any purported balance "reduction" would be wholly illusory if the consumer tendered a $109.57 payment but did not make any additional payments within three months.

102.    Upon information and belief, if the consumer tendered a $109.57 payment but did not make any additional payments, the "reduced balance" would revert to the "Total Balance," less a $109.57 credit for the payment received.

18

103.    Exhibit C is also unclear as to whether Convergent purports to offer to settle the account or has actually reduced the balance of the account, in which case paying of the "full amount" offered would actually pay the account in full.

104.    In the context of credit reporting, there is a difference between resolving an account by paying the account in full and resolving the account by settling it in full.  The unsophisticated consumer would be confused as to whether the account would be reported as "paid in full" or "settled in full."  *See e.g., Molton v. Experian Info. Solutions, Inc.*, 2004 U.S. Dist. 659, at *13 (N.D. Ill. Jan. 21, 2004); *Nielsen v. E*Trade Mortg. Corp.*, 2015 U.S. Dist. LEXIS 39781, at *4-5 (E.D. Mich. Mar. 30, 2015); *Shaw v. Experian Info. Solutions, Inc*., 2016 U.S. Dist. LEXIS 134991, at *31-32 (S.D. Calif. Sept. 28, 2016); *Keller v. Trans Union LLC*, 2017 U.S. Dist. LEXIS 283, at *7-8 (D. Ariz. Jan. 3, 2017).

105.    Upon information and belief, the "Reduced Balance Amount" stated in Exhibit B is actually an offer to settle the account, not a "reduced balance" by which the consumer may pay the account in full.

106.    Upon information and belief, if the consumer paid the "full reduced balance amount," Convergent, and/or the creditor, would report the account to consumer reporting agencies as "settled in full" rather than "paid in full."

107.    Upon information and belief, Convergent uses the phrase "reduced balance amount" to confuse consumers and induce them into paying this amount under the assumption that Convergent, and the creditor, will report the account to consumer reporting agencies as "paid in full."

108.    Moreover, while the debt validation notice is on the reverse side of Exhibit C, the face of the payment remittance slip in Exhibit C contains the following:

19

If we are calling you in error, please call 855-728-9701 or visit
our website at www.convergentusa.com.

Exhibit C.

109.    The instruction on the face of Exhibit C that the consumer should contact
Convergent by telephone "if we are calling you in error" is false, deceptive, and misleading to
the unsophisticated consumer because it contradicts, overshadows, and confuses the debt
validation notice on the reverse side of Exhibit C and encourages the consumer to forego her
verification rights by communicating disputes orally rather than in writing:

15 U.S.C. § 1692g(a)(4) states:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer
in connection with the collection of any debt, a debt collector shall, unless
the following information is contained in the initial communication or the
consumer has paid the debt, send the consumer a written notice
containing—

…

(4) a statement that if the consumer notifies the debt collector in
writing within the thirty-day period that the debt, or any portion thereof, is
disputed, the debt collector will obtain verification of the debt or a copy of
a judgment against the consumer and a copy of such verification or
judgment will be mailed to the consumer by the debt collector;

110.    To trigger verification rights, the debtor must provide the debt collector with
written notification that there is a dispute.  15 U.S.C. § 1692g(a)(4); *see McCabe v. Crawford &
Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003) ("If the debtor gives only *oral* notification
of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of
the debt.") (citing *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. May 20, 1999)).

111.    Upon receiving a *written* dispute from the consumer within the 30-day debt

validation period, the FDCPA requires the debt collector to contact the creditor and obtain

verification of the debt before conducting any further collection efforts. 15 U.S.C. § 1692g(b):

> (b) Disputed debts
>
>> If the consumer notifies the debt collector in writing within the thirty-day
>> period described in subsection (a) that the debt, or any portion thereof, is
>> disputed, or that the consumer requests the name and address of the
>> original creditor, the debt collector shall cease collection of the debt, or
>> any disputed portion thereof, until the debt collector obtains verification of
>> the debt or a copy of a judgment, or the name and address of the original
>> creditor, and a copy of such verification or judgment, or name and address
>> of the original creditor, is mailed to the consumer by the debt collector.
>> Collection activities and communications that do not otherwise violate this
>> subchapter may continue during the 30-day period referred to in
>> subsection (a) unless the consumer has notified the debt collector in
>> writing that the debt, or any portion of the debt, is disputed or that the
>> consumer requests the name and address of the original creditor. Any
>> collection activities and communication during the 30-day period may not
>> overshadow or be inconsistent with the disclosure of the consumer's right
>> to dispute the debt or request the name and address of the original creditor.

112.    The most likely reasons a consumer may believe Convergent is calling her "in

error" are that she has already paid the debt or never owed it in the first place, which are the

classic FDCPA disputes and the primary reasons Congress adopted the debt validation procedure

specified in 15 U.S.C. 1692g.  *Majeski v. I.C. Sys.*, 2010 U.S. Dist. LEXIS 1830, at *22 n. 6

("Congress enacted the FDCPA to 'eliminate the recurring problem of debt collectors dunning

the wrong person or attempting to collect debts which the consumer has already paid.") (quoting

*Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)).

113.    Exhibit C confusingly directs the debtor to notify Convergent about these disputes

by telephone, without informing the consumer that the dispute must be communicated in writing

in order to trigger verification.  *See Osborn v. Ekpsz, LLC*, 821 F.Supp.2d 859, 868, 870 (S.D.

Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the

21

issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections(a)(4) and (a)(5) must be made in writing."); *see also, McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743-44 (N.D. Ill. July 8, 2003) (omitting the words "in writing" from the validation notice conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at *9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F.Supp.2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F.Supp.2d 841, 845 (E.D. Va. May 5, 2011); *Welker v. Law Office of Daniel J. Horowitz*, 699 F.Supp.2d 1164, 1170 (S.D. Cal. 2010); *Beasley v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353, at *16 (N.D. Cal. Mar. 24, 2006); *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. Aug. 19, 2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS 25032, at *28 (M.D. Tenn. Nov. 15 2002); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990).

114. Convergent's instruction, which is offset and easily read, would confuse and mislead consumers who wish to dispute debts to believe that a debtor who disputes her debt orally is entitled to the same protections as if she had communicated her dispute in writing, when she is not so entitled. *See Clark v. Absolute Collection Serv.,* 741 F.3d 487, 491 (4th Cir. 2014); *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005).

115. The overshadowing effect is compounded because Convergent provides the validation notice on the reverse side of the letter but the offending language is on its face. *See e.g., Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990) ("The

22

invitation to telephone unaccompanied by any warning that the notice must be in writing to be effective obscures the dispute validation notice required by 15 U.S.C. § 1692g.").

116.     The overshadowing effect is also compounded by the general confusion caused by the confusion wrought by Convergent's "Reduced Balance" offers on the face of <u>Exhibit C</u>, which would prompt the consumer to telephone Convergent to ask what amount Convergent is actually attempting to collect, and whether the consumer was supposed to have been presented with other options. *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the receipient feel that he is in over his head and had better pay up rather than question the demand for payment."); *see also Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000) ("to authorize debt collectors to comply orally would be just an invitation to the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.").

117.     <u>Exhibit C</u> contradicts, overshadows and confuses the 15 U.S.C. § 1692g notice.

118.     Maniaci was confused and misled by <u>Exhibit C</u>.

119.     The unsophisticated consumer would be confused and misled by <u>Exhibit C</u>.

120.     Maniaci had to spend time and money investigating <u>Exhibit C</u> and the consequences of any potential responses to <u>Exhibit C</u>.

121.     Maniaci had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to obtain counsel on the consequences of <u>Exhibit C</u>.

### *THE FDCPA*

122.     The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect

23

consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

123.    The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

124.    Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

24

125.     Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989)

126.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized.  *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spoke*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey*

*Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

127.    Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

128.    15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

129.    15 U.S.C. § 1692e(2)(a) specifically prohibits:  "The false representation of—the character, amount, or legal status of any debt."

130.    15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

131.    15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

132.    15 U.S.C. § 1692g(a) states:

a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

. . .

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the

27

consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

133. 15 U.S.C. § 1692g(b) requires that these disclosures must be made in a non-confusing manner and prohibits debt collectors from communicating with the debtor in ways that overshadow or are inconsistent with the validation notice. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 317-18 (7th Cir. 2016).

134. The failure to make these disclosures in a non-confusing manner *per se* violates the FDCPA and there is no materiality inquiry necessary. *Janetos*, 825 F.3d at 324.

### The WCA

135. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

136. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

137. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

138. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also

28

competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

139.  To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

140.  The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

141.  Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

142.  Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

143.  Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

144.    Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

145.    The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

146.    Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

147.    Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

148.    The failure to effectively convey a customer's validation rights can reasonably be expected to harass the customer. *See* Wis. Admin. Code DFI-Bkg § 74.16(9) ("Oppressive and deceptive practices prohibited.") (prohibiting licensed Collection Agencies from engaging in conduct that "can reasonably be expected to threaten or harass the customer, including conduct which violates the Federal Fair Debt Collection Practices Act"); *see also Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 776 (Colo. Jan. 22, 2008) (communicating that a consumer's rights would be preserved through oral communication effectively misleads the consumer into delaying the transmission of the consumer's written request for the verifying documentation, thereby causing the loss of valuable consumer rights violated state statute forbidding harassing, abusive, misleading, and unfair debt collection practices).

## COUNT I – FDCPA

149.     Count I is brought on behalf of Guerrido and against Defendants ACI and Convergent.

150.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

151.     Exhibits A and B provide conflicting information as to the amount of the debt associated with Guerrido's account.

152.     Exhibits A and B fail to state the balance of Plaintiff's account in a non-confusing manner.

153.     Convergent and ACI violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – FDCPA

154.     Count II is brought against Defendants Convergent and Pinnacle and on behalf of Guerrido and Maniaci.

155.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

156.     Exhibits B and C contain confusing and misleading settlement offers.

157.     Exhibits B and C are confusing and misleading as to whether payment of the "reduced balance amount" would result in the account being reported to consumer reporting agencies as "Paid in Full" or "Settled in Full."

158.     Exhibit C is confusing and misleading as to whether the "reduced balance" would revert back to the "total balance" in the event a consumer made the initial payment stated in Opportunity #2 but made no further payments.

31

159. Convergent and Pinnacle violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, and 1692g(a)(1).

## **COUNT III – FDCPA**

160. Count III is brought against Defendants Convergent and Pinnacle and on behalf of Guerrido and Maniaci.

161. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

162. Exhibits B and C direct consumers to contact Convergent by phone "if we are calling you in error."

163. Exhibits B and C are misleading to the unsophisticated consumer because a consumer who wishes to trigger her verification rights must communicate her dispute in writing.

164. Convergent and Pinnacle violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, 1692g(a)(4), 1692g(a)(5), and 1692g(b).

## **COUNT IV - WCA**

165. Count IV is brought against Defendants Convergent and Pinnacle and on behalf of Guerrido and Maniaci.

166. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

167. Exhibits B and C mislead the unsophisticated consumer as to how to effectively exercise her rights to dispute the debt, and effectively mislead her into foregoing those rights.

168. Exhibits B and C contains misleading statements as to the balance of the account and false threats as to how the debt will be reported.

169.    Convergent and Pinnacle violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), 427.104(1)(L).

## COUNT V - WCA

170.    Count V is brought against Defendant Convergent and on behalf of Guerrido and Maniaci.

171.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

172.    Convergent is a licensed Collection Agency.

173.    Exhibits B and C violate the FDCPA.

174.    Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

175.    Plaintiffs bring this action on behalf of two Classes:

176.    Class I ("No Options 2 or 3 Class"), consists of (a) all natural persons in the State of Wisconsin (b) who were sent collection letters in the form represented by Exhibit B to the complaint in this action, (c) where the payment remittance slip offered only the "Lump Sum Reduced Balance Offer," (d) and Convergent was attempting to collect a debt incurred for personal, family or household purposes, (e) and the letter in the form of Exhibit B was mailed March 27, 2017 and March 27, 2018, inclusive, (f) and was not returned by the postal service. Guerrido is the named representative for Class I.

177.    Class II ("Confusing Opportunity #2 Class"), consists of (a) all natural persons in the State of Wisconsin (b) who were sent collection letters in the form represented by Exhibit C to the complaint in this action, (c) where the payment remittance slip offered a payment over time option, (d) and Convergent was attempting to collect a debt incurred for personal, family or

33

household purposes, (e) and the letter in the form of <u>Exhibit B</u> was mailed March 27, 2017 and March 27, 2018, inclusive, (f) and was not returned by the postal service. Maniaci is the named representative for Class II.

178. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

179. There are questions of law and fact common to the members of the each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with the FDCPA and the WCA.

180. Plaintiffs' claims are typical of the claims of the members of each class. All are based on the same factual and legal theories.

181. Plaintiffs will fairly and adequately represent the interests of the members of each class. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

182. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

<b><u>JURY DEMAND</u></b>

183. Plaintiffs hereby demand a trial by jury.

<b><u>PRAYER FOR RELIEF</u></b>

WHEREFORE, Plaintiffs requests that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendants for:

(a)     actual damages;

(b)     statutory damages;

34

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated: March 27, 2018

**ADEMI & O'REILLY, LLP**

By:    s/  Mark A. Eldridge
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com